PAINEWEBBER INCORPORATED,
Petitioner–Appellant,

v.

Michael J. BYBYK and Joyce O. Bybyk,
Respondents–Appellees.

No. 370, Docket 94–9246.

United States Court of Appeals,
Second Circuit.

Argued Oct. 31, 1995.

Decided April 19, 1996.

Bonnie Steingart, Fried, Frank, Harris, Shriver & Jacobson, New York City (Brad S. Maistrow, Meyers & Maistrow, New York City, on the brief), for Petitioner–Appellant PaineWebber Incorporated.

John E. Lawlor, Garden City, NY, for Respondents–Appellees Michael J. Bybyk and Joyce O. Bybyk.

Lawrence E. Fenster, Orrick, Herrington & Sutcliffe, New York City, for Securities Industry Association as Amicus Curiae.

Stuart C. Goldberg, Deutsch & Lipner, Garden City, NY, for Public Investors Arbitration Bar Association as Amicus Curiae.

Before: VAN GRAAFEILAND, JACOBS and PARKER, Circuit Judges.

JACOBS, Circuit Judge:

In 1987, respondents-appellees Joyce and Michael Bybyk opened an investment account with petitioner-appellant PaineWebber Incorporated. On March 14, 1990, the parties executed a client agreement which contained an arbitration clause. That clause (which had retrospective as well as prospective effect) provided for the arbitration of "any and all controversies which may arise" concerning the account. The client agreement further provided that all claims were to be arbitrated in accordance with the "rules of the organization convening the panel."

On September 24, 1993, the Bybyks filed a statement of claim with the National Association of Securities Dealers (the "NASD") alleging, among other things, PaineWebber's failure to supervise their account and breach of fiduciary duty. PaineWebber then commenced an action in New York Supreme Court to stay permanently arbitration of the particular claims that arose out of investments made prior to September 24, 1987, on the ground that those claims were time-barred by a six-year limitations provision of

the NASD Code. PaineWebber also sought to enjoin the Bybyks from proceeding with the arbitration pending before the NASD and from seeking attorneys' fees or punitive damages. The Bybyks subsequently removed the suit to federal court.

The United States District Court for the Southern District of New York, (Duffy, J.) granted the Bybyks' motion to dismiss the complaint on the ground that the arbitration agreement reserved for arbitration the issue of whether a claim is arbitrable. On appeal, PaineWebber invokes the principle that the court—not an arbitrator—must determine whether a claim is arbitrable in accordance with the provisions of an arbitration agreement. We conclude, however, that the arbitration agreement evinces the parties' intent to submit issues of arbitrability to the arbitrators. The effect that any timeliness requirement has on the Bybyks' claims must therefore be determined by the arbitrator rather than the court. Accordingly, we affirm the district court's dismissal of the complaint.

## BACKGROUND

A. *Events Giving Rise To This Appeal.*

In July, 1987, the Bybyks opened an investment account with PaineWebber. On March 14, 1990, in connection with that account, the Bybyks executed a client agreement (the "Agreement") which recites in relevant part as follows:

- Arbitration is final and binding on the parties.
- The parties are waiving their right to seek remedies in court, including the right to jury trial.

. . . .

I agree, and by carrying an account for me PaineWebber agrees, that any and all controversies which may arise between me and PaineWebber concerning any account, transaction, dispute or the construction, performance, or breach of this or any other agreement, whether entered into prior, on or subsequent to the date hereof, shall be determined by arbitration. Any arbitration under this agreement shall be held under and pursuant to and be governed by the Federal Arbitration Act, and shall be conducted before an arbitration panel convened by the New York Stock Exchange, Inc., or the National Association of Securities Dealers, Inc. I may also select any other national securities exchange's arbitration forum upon which PaineWebber is legally required to arbitrate the controversies with me, including, where applicable, the Municipal Securities Rule Making Board. Such arbitration shall be governed by the rules of the organization convening the panel. . . . The award of the arbitrators, or of the majority of them, shall be final, and judgment upon the award rendered may be entered in any court of competent jurisdiction.

The Agreement also contains a choice of law provision which provides that "[t]his agreement and its enforcement shall be construed and governed by the laws of the State of New York." PaineWebber drafted the Agreement.

On July 16, 1993, the Bybyks filed a uniform submission agreement with the NASD to initiate arbitration with PaineWebber. On September 24, 1993, the Bybyks filed a statement of claim with the NASD against Paine-Webber. The statement of claim alleges, among other things, that PaineWebber recommended and executed unsuitable transactions, failed to supervise the account, and breached its fiduciary duty to the Bybyks.

PaineWebber promptly commenced a special proceeding in New York Supreme Court pursuant to N.Y.Civ.Prac. L. & R. 7502 and 7503 (McKinney 1980 & Supp.1996), seeking a permanent stay of arbitration with respect to those claims arising from investments made six years prior to September 24, 1993, the date the Bybyks filed their statement of claim. PaineWebber alleged that section 15 of the NASD Code rendered those claims untimely. Section 15 states as follows:

No dispute, claim, or controversy shall be eligible for submission to arbitration under this Code where six (6) years have elapsed from the occurrence or event giving rise to the act or dispute, claim or controversy. This section shall not extend applicable statutes of limitation, nor shall it apply to

any case which is directed to arbitration by a court of competent jurisdiction.

National Association of Securities Dealers, Inc., Code of Arbitration Procedure, NASD Manual ¶ 3715 (1994). PaineWebber also sought to enjoin arbitration of any claims for punitive damages or attorneys' fees. The Bybyks removed this proceeding to federal district court and filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that the Agreement expressly reserved all questions of arbitrability for arbitration, including issues of timeliness.

In a pithy Endorsement Order dated October 20, 1994, Judge Duffy ruled as follows:

> Plaintiff seeks to forestall any arbitration by contending that the NASD statute of limitations precludes recovery. This obviously is a question for the arbitrators. *See* 9 U.S.C. § 2; *see also Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987).
> The motion to dismiss is granted.

B. *The Parties' Contentions on Appeal.*

On appeal, PaineWebber argues that the court—not the arbitrator—decides whether a claim falls within the period of limitations set forth at section 15 of the NASD Code. PaineWebber starts from the well-established premise that the courts determine the scope of the arbitration agreement—what issues may and may not be arbitrated. According to PaineWebber, the court in so doing must respect the parties' choice that issues of construction and interpretation are controlled by New York law, including authority under New York law (and consistent with the law of several circuits) that section 15 of the NASD Code is a substantive eligibility requirement that the court must determine is satisfied before directing a claim to arbitration. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. DeChaine*, 194 A.D.2d 472, 600 N.Y.S.2d 459 (1st Dep't), *appeal denied*, 82 N.Y.2d 657, 604 N.Y.S.2d 556, 624 N.E.2d 694 (1993); *PaineWebber, Inc. v. Hartmann*, 921 F.2d 507, 513–14 (3rd. Cir.1990) (holding that the NASD Code's eligibility requirement is a substantive limit on claims that may be arbitrated).

Furthermore, under New York law, attorneys' fees may not be awarded in arbitration unless the arbitration agreement expressly affords such relief. N.Y.Civ.Prac. L. & R. 7513 (McKinney 1980).

The Bybyks argue that the Agreement evinces the parties' "clear and unmistakable" intent to arbitrate issues of arbitrability, *see First Options of Chicago, Inc. v. Kaplan*, —— U.S. ——, ——, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995), and that the district court therefore properly allowed the arbitrators to decide whether section 15 of the Code bars those claims alleged to be untimely. Furthermore, the Bybyks argue that under *Conticommodity Servs. Inc. v. Philipp & Lion*, 613 F.2d 1222, 1225 (2d Cir.1980), the validity of a time-bar defense such as section 15 is an issue for arbitration. With respect to PaineWebber's argument that New York law bars recovery of attorneys' fees, the Bybyks, relying on *Mastrobuono v. Shearson Lehman Hutton, Inc.*, —— U.S. ——, ——, 115 S.Ct. 1212, 1217, 131 L.Ed.2d 76 (1995), argue that their substantive right under the Federal Arbitration Act to enforce the arbitration provision is unaffected by the Agreement's choice of New York law. Because the parties' intent to refer all issues to arbitration must be respected, the Bybyks contend that the district court correctly dismissed PaineWebber's action to stay arbitration.

### DISCUSSION

This Court reviews *de novo* a district court's grant of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *Citibank, N.A. v. K-H Corp.*, 968 F.2d 1489, 1494 (2d Cir.1992). When an appeal comes before this Court on a motion to dismiss, we accept as true the factual allegations of the complaint. *Square D Co. v. Niagara Frontier Tariff Bureau, Inc.*, 476 U.S. 409, 411, 106 S.Ct. 1922, 1923–24, 90 L.Ed.2d 413 (1986); *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1098 (2d Cir.1988), *cert. denied*, 490 U.S. 1007, 109 S.Ct. 1642, 1643, 104 L.Ed.2d 158 (1989). In considering such motions, we must read the complaint liberally, drawing all inferences in favor of the pleader. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90

(1974). Moreover, we will reverse a district court's dismissal of the complaint "unless it appears to a certainty that a plaintiff can prove no set of facts entitling him to relief." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir.1984).

## A. *Arbitrability.*

■ Arbitration "is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986) (quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960)). The Federal Arbitration Act creates a "body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). Any arbitration agreement affecting interstate commerce, such as the one at issue, is subject to the Act. *Id.; see* 9 U.S.C. §§ 1 & 2 (1988).

■ Pursuant to section 4 of the Federal Arbitration Act, the court

shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

9 U.S.C. § 4 (1988). The role of the courts in reviewing matters subject to arbitration, therefore, is limited to determining two issues: i) whether a valid agreement or obligation to arbitrate exists, and ii) whether one party to the agreement has failed, neglected or refused to arbitrate, in whole or in part. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04, 87 S.Ct. 1801, 1805–06, 18 L.Ed.2d 1270 (1967). Thus, "[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."

*AT & T Technologies*, 475 U.S. at 649, 106 S.Ct. at 1418; *see also John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 546–47, 84 S.Ct. 909, 913–13, 11 L.Ed.2d 898 (1964). In other words, the court must determine whether a given issue falls within the scope of the parties' undertaking to accept arbitration.

■ That said, the parties themselves may provide that the arbitrator, not the court, shall determine whether an issue is arbitrable. In such cases the contract-based analysis set forth in *Prima Paint* and *AT & T Technologies* still applies, but compels the opposite result. As the Supreme Court has recently stated:

Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question "who has the primary power to decide arbitrability" turns upon what the parties agreed about *that* matter. *Did the parties agree to submit the arbitrability question itself to arbitration?*

*First Options,* ―― U.S. at ――, 115 S.Ct. at 1923 (citations omitted and emphasis added). The question posed in *First Options* is the question presented in this appeal.

■ *First Options* assists in answering the question it frames. As an initial matter, in interpreting an arbitration agreement we apply the principles of state law that govern the formation of ordinary contracts. *Id.* at ――, 115 S.Ct. at 1924; *see also Mastrobuono,* ―― U.S. at ――, 115 S.Ct. at 1217. Where the arbitration agreement is ambiguous, the Federal Arbitration Act's policy favoring arbitration requires that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24–25, 103 S.Ct. at 941. However, where the arbitration agreement contains an ambiguity as to *who* determines eligibility, the Act's presumption favoring arbitration is reversed so that the court will ordinarily decide the question. *First Options,* ―― U.S. at ――, 115 S.Ct. at 1924. Thus, under *First Options* and *AT & T Technologies,* the arbitrability of a given issue is a question for the court *unless* there is "clear and unmistakable" evidence from

the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator. *Id.* We apply that standard in this appeal.

B. *The Parties' Intent as Evidenced in the Agreement.*

 The Agreement specifically states that it is to be construed in accordance with New York law. New York follows the common law rule that, "[i]n interpreting a contract, the intent of the parties governs," and therefore "[a] contract should be construed so as to give full meaning and effect to all of its provisions." *American Express Bank Ltd. v. Uniroyal, Inc.,* 164 A.D.2d 275, 277, 562 N.Y.S.2d 613, 614 (1st Dep't 1990), *appeal denied,* 77 N.Y.2d 807, 569 N.Y.S.2d 611, 572 N.E.2d 52 (1991); *see also Tigue v. Commercial Life Ins. Co.,* 631 N.Y.S.2d 974, 975 (4th Dep't 1995) ("[T]he court must ascertain the intent of the parties from the plain meaning of the language employed."). In interpreting a contract, "[w]ords and phrases are given their plain meaning. Rather than rewrite an unambiguous agreement, a court should enforce the plain meaning of that agreement." *American Express,* 164 A.D.2d at 277, 562 N.Y.S.2d at 614 (citations omitted); *see also Heller v. Pope,* 250 N.Y. 132, 135, 164 N.E. 881 (1928). Furthermore, where "the intent of the parties can be determined from the face of the agreement, interpretation is a matter of law," and a claim turning on that interpretation may thus be determined by summary judgment or by dismissal. *American Express,* 164 A.D.2d at 277, 562 N.Y.S.2d at 614; *see also Tigue,* 631 N.Y.S.2d at 974.

██ As *Mastrobuono* makes clear, the common-law rule of contract interpretation that "a court should construe ambiguous language against the interest of the party that drafted it" applies in interpreting arbitration agreements. —— U.S. at ——, 115 S.Ct. at 1219; *see also Graff v. Billet,* 64 N.Y.2d 899, 902, 487 N.Y.S.2d 733, 734–35, 477 N.E.2d 212 (1984). The purpose of this rule is "to protect the party who did not choose the language from an unintended or unfair result." *Mastrobuono,* —— U.S. at ——, 115

S.Ct. at 1219. This rule applies here: the Bybyks did not draft, edit or alter the Agreement; nor did they have the opportunity to influence the specific provision of the NASD Code (purportedly incorporated into the contract by reference) that now governs their claim in arbitration. Therefore, to the extent that PaineWebber "drafted an ambiguous document ... they cannot now claim the benefit of the doubt" in construing any ambiguities. *Id.* With these principles in mind, we look to the language of the Agreement in order to discern the parties' intent.

Several provisions in the Agreement evidence the parties' intent to arbitrate all issues, including arbitrability:

(a) "*[A]ny and all controversies ... concerning any account, transaction, dispute or the construction, performance, or breach of this or any other agreement ... shall be determined by arbitration....*"

(b) "[T]he parties are waiving their right to seek remedies in court...."

(c) "[A]ny arbitration under this agreement shall be held under and pursuant to and be governed by the Federal Arbitration Act...."

(d) "[A]rbitration shall be governed by the rules of the organization convening the panel...."

The meaning of the first of these provisions is plain indeed: any and all controversies are to be determined by arbitration. The wording is inclusive, categorical, unconditional and unlimited. The words "any and all" are elastic enough to encompass disputes over whether a claim is timely and whether a claim is within the scope of arbitration. That provision expressly includes the category of disputes regarding the construction of the Agreement—such as whether it incorporates the NASD Code. The Bybyks invite us to construe the second listed provision as an express waiver of the parties' right to contest arbitrability in court or to seek remedies preventing an untimely claim from being submitted to arbitration; at the very least, that provision is a missed opportunity for a draftsman seeking to avoid such a waiver. We read the succeeding two provisions together as specifying that the rules of the

organization convening the arbitration panel shall govern the arbitration itself to the extent that those rules are consistent with the Federal Arbitration Act.

The parties' broad grant of power to the arbitrators is unqualified by any language carving out substantive eligibility issues (with or without specific reference to timeliness) for resolution by the courts. PaineWebber is thus unable to overcome the presumption established in the first of the above-listed provisions that "[a]ny and all controversies" are to be arbitrated. An objective reading of the Agreement, therefore, leads us to conclude that the parties intended to arbitrate issues of arbitrability. Put another way, no draftsman seeking a six-year limitation on the scope of arbitrability would craft this language to accomplish that objective. If the Bybyks' claim is untimely, PaineWebber's remedy is to defend the arbitration action on timeliness grounds, not to enjoin arbitration altogether.

PaineWebber argues for an altogether different reading of the Agreement. It contends that the contractual choice of New York law signifies the parties' intent to be bound by substantive limitations imposed by the New York courts on the power of an arbitrator to determine issues of arbitrability. In so arguing, PaineWebber relies on *Smith Barney, Harris Upham & Co. v. Luckie*, 85 N.Y.2d 193, 202, 623 N.Y.S.2d 800, 805, 647 N.E.2d 1308, *cert. denied*, —— U.S. ——, 116 S.Ct. 59, 133 L.Ed.2d 23 (1995), in which the New York Court of Appeals held that the New York choice of law provision in a similar client agreement effectively incorporated substantive limitations of New York law on the arbitrability of punitive damages. Since New York law generally reserves issues of timeliness and arbitrability for the courts, *see County of Rockland v. Primiano Constr. Co.*, 51 N.Y.2d 1, 6–7, 431 N.Y.S.2d 478, 480–81, 409 N.E.2d 951 (1980), PaineWebber argues that the parties' choice of New York law means that all such issues of arbitrability must be settled by the court. *See Volt Info. Sciences v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 476–77, 109 S.Ct. 1248, 1254–55, 103 L.Ed.2d 488 (1989) (Federal Arbitration Act does not preempt choice-of-law provision signifying parties' intent to be bound by state rules governing arbitration).

PaineWebber's reliance on *Luckie* is self-defeating. In deciding *Luckie*, the New York Court of Appeals relied on the Seventh Circuit's decision in *Mastrobuono*, which was subsequently overturned by the Supreme Court. *See Luckie*, 85 N.Y.2d at 202, 623 N.Y.S.2d at 805, 647 N.E.2d 1308. In *Mastrobuono*, the Supreme Court rejected the argument that PaineWebber makes here and the argument that the New York Court of Appeals advanced in *Luckie*. —— U.S. at ——, 115 S.Ct. at 1219. The client agreement in *Mastrobuono*, like the one at issue here, included a choice-of-law provision that specified that the entire agreement was to be governed by New York law, and an arbitration provision that specified that any controversy was to be arbitrated in accordance with the rules of the NASD. *Id.* at —— —— ——, 115 S.Ct. at 1216–17. The brokerage house contended that the choice of law provision evidenced the parties' intent to exclude punitive damages from arbitration, because arbitrators may not award punitive damages under New York law. The Supreme Court disagreed, and held that a choice of law provision, without more, cannot impute a specific intent of the parties to exclude punitive damages. *Id.* at ——, 115 S.Ct. at 1219. Instead, a choice-of-law provision "may reasonably be read as merely a substitute for the conflict-of-laws analysis that otherwise would determine what law to apply to disputes arising out of the contractual relationship." *Id.* at ——, 115 S.Ct. at 1217. Therefore, a choice-of-law provision, when accompanied by an arbitration provision such as in the Agreement, "encompass[es] substantive principles that New York courts would apply, *but not ... special rules limiting the authority of the arbitrators.*" *Id.* at ——, 115 S.Ct. at 1219 (emphasis added). *Mastrobuono*, squarely on point, supports the Bybyks' contentions that, under the Federal Arbitration Act, they are not prevented by the New York choice of law provision from arbitrating issues of timeliness and attorneys' fees.

PaineWebber next contends that the forum-rules provision—"arbitration shall be

governed by the rules of the organization convening the panel"—incorporates the NASD Code by reference, including section 15 of the NASD Code. That section is cast in the language of "eligibility" and is thus arguably a "substantive limitation". Since, under the Federal Arbitration Act, the court decides whether substantive limitations are met before directing a claim to arbitration, PaineWebber contends that the court must determine whether the Bybyks' claim is time–barred under section 15.

We conclude, however, that the NASD Code is not incorporated into the Agreement. Under New York law, "a paper referred to in a written instrument and sufficiently described may be made a part of the instrument as if incorporated into the body of it." *Jones v. Cunard S.S. Co.*, 238 A.D. 172, 173, 263 N.Y.S. 769, 771 (2d Dep't 1933). At common law, "[i]n order to uphold the validity of terms incorporated by reference it must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms." *Lamb v. Emhart Corp.*, 47 F.3d 551, 558 (2d Cir.1995). New York follows that common law rule by "requir[ing] that the paper to be incorporated into a written instrument by reference must be so referred to and described in the instrument that the paper may be *identified beyond all reasonable doubt.*" *Chiacchia v. National Westminster Bank USA*, 124 A.D.2d 626, 628, 507 N.Y.S.2d 888, 889–90 (2d Dep't 1986) (emphasis added). While a party's failure to read a duly incorporated document will not excuse the obligation to be bound by its terms, *see Level Export Corp. v. Wolz, Aiken & Co.*, 305 N.Y. 82, 87, 111 N.E.2d 218 (1953), a party will not be bound to the terms of any document unless it is clearly identified in the agreement. *Chiacchia*, 124 A.D.2d at 628, 507 N.Y.S.2d at 890 (agreement with no direct reference to second document did not incorporate that document); *see also Weiner v. Mercury Artists Corp.*, 284 A.D. 108, 109, 130 N.Y.S.2d 570, 571 (1st Dep't 1954) (one-page contract did not validly incorporate arbitration provision buried in 207–page booklet).

The Agreement does not meet this standard. While the Agreement contemplates that any arbitration *may* be conducted before an NASD panel, subject to NASD arbitration rules, the Agreement *requires* no such thing. Under the Agreement, the parties may choose to arbitrate a dispute before the NYSE, the NASD, or (at the Bybyks' election) "any other national securities exchange's arbitration forum upon which Paine-Webber is legally required to arbitrate." The Agreement presumes that each of these organizations has its own set of rules. Some of those rules may be couched in terms of "eligibility" requirements or limitations periods. But the Agreement cannot be deemed to incorporate *all* these limitations rules by reference, because there is no basis for assuming that they are consistent in casting limitations in terms of eligibility, in fixing the limitations period, or in applying principles of tolling and accrual.

The only reason PaineWebber can point to the "eligibility" language of section 15 of the NASD Code is that the NASD has already been designated as the arbitral forum. Looking at the Agreement *ex ante*—as it was when the Bybyks signed it—no one could tell with certainty which forum would be designated or which set of rules would govern in the event of a dispute. Indeed, there is no reason why two disputes arising under the Agreement could not become the subject of two statements of claim lodged in two different forums. Certainly, the NASD Code may govern a dispute once it is actually in arbitration before an NASD arbitration panel. But since the NASD Code is not a part of the Agreement, we will not look to it in determining the Agreement's scope. In short, it cannot be that these parties formed the objective intent to incorporate any *one* body of rules into the agreement itself. Paine-Webber has thus not shown that the NASD Code (in particular) is incorporated into the Agreement "beyond all reasonable doubt." *See Chiacchia*, 124 A.D.2d at 628, 507 N.Y.S.2d at 890. We need not determine, therefore, whether section 15 of the NASD Code is a substantive or procedural limitation on claims; the Code is not incorporated by reference, and thus does not affect our above conclusion that the parties intended to arbitrate issues of arbitrability.

Even if the NASD Code were incorporated into the Agreement, we would still conclude that the parties intended to arbitrate the issue of arbitrability, because the NASD Code itself grants to the arbitrators the power to interpret and apply section 15. Section 35 of the NASD Code provides as follows:

> The arbitrators shall be empowered to interpret and determine the applicability of *all provisions* under this Code and to take appropriate action to obtain compliance with any ruling by the arbitrator(s).

National Association of Securities Dealers, Inc., Code of Arbitration Procedure, NASD Manual ¶ 3735 (1994) (emphasis added). Nothing in the NASD Code removes section 15 from the ambit of section 35. As the Eighth Circuit recently held after examining a client agreement that expressly incorporated the NASD Code:

> [T]he parties' adoption of this provision [section 35] is a "clear and unmistakable" expression of their intent to leave the question of arbitrability to the arbitrators. In no uncertain terms, section 35 commits interpretation of all provisions of the NASD Code to the arbitrators. Reading the NASD Code ... as a whole, we see no reason not to apply section 35 to the arbitrators' decision regarding the application of section 15.

*FSC Securities Corp. v. Freel*, 14 F.3d 1310, 1312–13 (8th Cir.1994). Thus, the Eighth Circuit concluded that "by adopting the NASD Code of Arbitration Procedure as the rules governing their dispute, appellants agreed to give the arbitrators discretion via section 35 ... to interpret section 15's time limitation." *Id.* at 1313. We agree. The language of the Code itself commits all issues, including issues of arbitrability and timeliness, to the arbitrators.

### C. *Attorneys' Fees.*

 Last, PaineWebber contends that the Bybyks may not submit their claim for attorneys' fees to arbitration, because the Agreement provides that it and its enforcement "shall be governed by the laws of the State of New York," under which attorneys' fees may not be submitted to an arbitrator unless expressly provided. *See* N.Y.Civ.

Prac. L. & R. 7513 (McKinney 1980). Although PaineWebber sought an injunction barring the Bybyks from seeking attorneys' fees in arbitration, we see no indication that the issue of attorneys' fees was otherwise the subject of proceedings in the district court; Judge Duffy's order certainly makes no mention of it. However, the district court dismissed all of PaineWebber's claims, and that dismissal is final under 28 U.S.C. § 1291 with respect to that issue.

We therefore deduce that the district court ruled correctly on that issue as well. The Agreement provides that "any and all controversies" shall be submitted to arbitration; there is no express limitation with respect to attorneys' fees. For reasons already stated, a choice of law provision will not be construed to impose substantive restrictions on the parties' rights under the Federal Arbitration Act, including the right to arbitrate claims for attorneys' fees. *See Mastrobuono,* —— U.S. at ——–——, 115 S.Ct. at 1218–19. Therefore, PaineWebber cannot rely on the New York choice-of-law provision to prevent the Bybyks from seeking in arbitration a remedy that is not foreclosed by the Agreement.

## CONCLUSION

For the reasons set forth herein, the decision of the district court is affirmed.

VAN GRAAFEILAND, Circuit Judge, dissenting:

The eight-line decision of the court below is not simply "pithy," as my colleagues generously describe it. It fails completely to discuss the parties' expressed intent and the effect of such expressed intent on arbitrability. As a result, this Court has been forced to make this determination, a task that should have been performed by the district court. Unfortunately, our *de novo* undertaking has not left us in unanimous accord.

In *Volt Info. Sciences v. Board of Trustees of Leland Stanford Junior Univ.,* 489 U.S. 468, 479, 109 S.Ct. 1248, 1256, 103 L.Ed.2d 488 (1989), the Court instructed us as follows:

> Arbitration under the [FAA] is a matter of consent, not coercion, and parties are gen-

erally free to structure their arbitration agreements as they see fit. Just as they may limit by contract the issues which they will arbitrate, so too may they specify by contract the rules under which that arbitration will be conducted. Where, as here, the parties have agreed to abide by state rules of arbitration, enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA, even if the result is that arbitration is stayed where the [FAA] would otherwise permit it to go forward. By permitting the courts to "rigorously enforce" such agreements according to their terms, we give effect to the contractual rights and expectations of the parties, without doing violence to the policies behind by [sic] the FAA. (citations omitted)

The "CLIENT'S AGREEMENT" at issue herein provides under the heading "Jurisdiction":

All transactions made for my account(s) shall be governed by the terms of this agreement. This agreement and its enforcement shall be construed and governed by the laws of the State of New York, and shall be binding upon my heirs, executors, administrators, successors, and assigns.

I find no ambiguity in this provision. It is determinative of the issue as to whether arbitration should be held. The provisions quoted at page 1199 of the majority opinion are contained in a paragraph headed "ARBITRATION." They govern the nature of any issues that may be passed upon; i.e., controversies between the Bybyks and PaineWebber concerning any account, transaction, dispute, etc., the resolution of which shall be governed by the FAA and shall be conducted before a designated arbitration panel.

These provisions are very similar to the ones contained in the agreement at issue in *Smith Barney, Harris Upham & Co. v. Luckie*, 85 N.Y.2d 193, 623 N.Y.S.2d 800, 647 N.E.2d 1308, *cert. denied*, —— U.S. ——, 116 S.Ct. 59, 133 L.Ed.2d 23 (1995). There, the New York Court of Appeals said:

Undeniably, in the absence of an explicit choice of law provision, governing Federal law would have precluded the courts in the appeals before us from addressing the Statute of Limitations issue (*see, Conticommodity Servs. v. Philipp & Lion*, 613 F.2d 1222, 1224–1225 [2d Cir.1980]) or from issuing stays under our arbitration act (*see, Matter of Rederi* [*Dow Chem. Co.*], 25 N.Y.2d 576, 585, 307 N.Y.S.2d 660, 255 N.E.2d 774). However, the parties' choice that New York law would govern "the agreement *and its enforcement*" (emphasis added) indicates their "intention to arbitrate to the extent allowed by [this State's] law," even if application of the State law—and an adverse ruling on a Statute of Limitations claim—would relieve the parties of their responsibility under the contract to arbitrate (*Armco Steel Co. v. CSX Corp.*, 790 F.Supp. 311, 318 [(D.D.C. 1991)]; *see also, Saturn Distrib. Corp. v. Williams*, 905 F.2d 719 [4th Cir. 1990] [parties are entitled to incorporate State law restrictions into their arbitration agreement that would otherwise be preempted by the FAA], *cert denied* 498 U.S. 983, 111 S.Ct. 516, 112 L.Ed.2d 527; *Flight Sys. v. Paul A. Laurence Co.*, 715 F.Supp. 1125 [D.D.C. 1989]). Although the parties broadly agreed to arbitrate "any controversy" arising from the customer agreements, that clause—like all other provisions in the contract—was subject to the parties' additional qualification that New York State law provides the basis of decision for questions concerning not only the agreement, but more critically, its enforcement. Accordingly, we conclude that under this agreement the parties agreed to refer questions of timeliness to the courts by incorporating New York law. In other words, when the parties chose to apply New York law, "without excluding its arbitration rules" from that general condition (*Mastrobuono v. Shearson, Lehman Hutton*, 20 F.3d 713, 717 [7th Cir.1994], *cert. granted* 514 U.S. ——, 115 S.Ct. 305 [130 L.Ed.2d 218 (1994)]), the parties adopted as binding New York's rule that threshold Statute of Limitations questions are for the courts.

*Id.* at 202, 623 N.Y.S.2d at 805.

My colleagues' rejection of *Luckie* as binding New York authority is unwarranted, and their reliance upon *Mastrobuono v. Shearson Lehman Hutton, Inc.*, —— U.S. ——, 115

S.Ct. 1212, 131 L.Ed.2d 76 (1995), in support of this rejection is misplaced. The issue in *Mastrobuono* was not, as here, whether arbitration would be barred by the passage of time; it was whether arbitrators in a timely conducted arbitration could award punitive damages. It is significant that *Mastrobuono* did not interpret the "any controversy" language at issue herein, and the choice-of-law provision did not contain the critical phrase "and its enforcement." It also is significant that the New York Court of Appeals denied a motion for reargument in *Luckie* that was based in part upon the Supreme Court's decision in *Mastrobuono*, 85 N.Y.2d 193, 623 N.Y.S.2d 800, 647 N.E.2d 1308 (1995). In short, under New York law, the timeliness of arbitration is substantially different from the resolution of the issues to be arbitrated.

It also is well established under New York law that the courts, not arbitrators, decide whether claims sought to be arbitrated are barred by limitations of time. *See, e.g., Paver & Wildfoerster v. Catholic High School Ass'n*, 38 N.Y.2d 669, 674, 382 N.Y.S.2d 22, 345 N.E.2d 565 (1976); *Caudill, Rowlett, Scott v. Board of Educ.*, 47 A.D.2d 610, 364 N.Y.S.2d 7 (1975)(mem.); *Buck Creek Indus., Inc. v. Beattie Mfg. Co.*, 96 Misc.2d 812, 815, 409 N.Y.S.2d 575 (1978). It cannot be gainsaid that in bringing the instant proceeding, PaineWebber was seeking compliance with the provision in the Claim Agreement that actions to enforce it "shall be governed by the laws of New York." Under the circumstances, I find the following excerpt from Chief Judge Kaye's concurring opinion in *Luckie* most compelling:

> I concur in the Court's opinion and conclusion that because the form arbitration agreements at issue plainly provide that New York law governs the "agreement *and its enforcement*" (emphasis added), the parties can fairly be understood to have agreed that all of New York arbitration law (including the provisions of CPLR article 75 which allow a party to first litigate Statute of Limitations issues in court) would apply.

85 N.Y.2d at 207, 623 N.Y.S.2d at 808.

I believe that the matter should be remanded to the district court with instructions to determine whether the claims the Bybyks seek to enforce in arbitration are timely.