**KIDDER, PEABODY & CO., INC., Petitioner,**

v.

**Charles MARRINER, Respondent.**

**KIDDER, PEABODY & CO., INC., Petitioner,**

v.

**WILLIAM A. ROSENFIELD TRUST, et al., Respondents.**

**KIDDER, PEABODY & CO., INC., Petitioner,**

v.

**Leonard WILLIG, Respondent.**

Nos. 95 Civ. 10783 (HB), 95 Civ. 10324 (HB), 95 Civ. 4497 (HB).

United States District Court, S.D. New York.

April 2, 1997.

*OPINION AND ORDER*

BAER, District Judge.

Petitioner in these three matters seeks a stay of arbitration of some or all of the claims. Respondents oppose the petition. For the following reasons, the petition to stay is granted in part and denied in part.

## I. *Background*

Not surprisingly, this lawsuit has arisen from disputes about investments. While the issues in these cases overlap, important factual distinctions pervade the petitions to stay arbitration. All three of the cases were filed with the American Arbitration Association (the "AAA"), except for *Marriner*, which was filed with the American Stock Exchange (the "Amex"). Also, there were no predispute arbitration agreements between petitioner and the respondents in *Marriner*, *Willig*, or with respect to one of the four accounts in the *Rosenfield* matter (the *Rosenfield* Trust). The three other accounts in *Rosenfield* (William Rosenfield, Sylvia Rosenfield, and the William and Sylvia Rosenfield Joint Account) were subject to predispute arbitration agreements. These distinctions (as well as the decisions for each with respect to the issues presented here) are summarized in the following table:

| Party | Forum | Pre-dispute Agreement | Punitive Damages & Atty's Fees | Stayed re: 6 Year Eligibility Rule |
|---|---|---|---|---|
| *Marriner* | Amex | No | Petitioner concedes these are arbitrable | Bound by Amex 6 year rule--arbitration stayed except for 9/18/89 investment in American Income Partners V–A |
| *William Rosenfield* | AAA | Yes | Both are arbitrable | Predispute agreement to arbitrate all matters--no stay |
| *Rosenfield Trust* | AAA | No | Petitioner concedes these are arbitrable | Amex Rules inapplicable--no stay |
| *William & Sylvia Rosenfield* | AAA | Yes | Both are arbitrable | Predispute agreement to arbitrate all matters--no stay |

| Party | Forum | Pre-dispute Agreement | Punitive Damages & Atty's Fees | Stayed re: 6 Year Eligibility Rule |
|-------|-------|----------------------|-------------------------------|-----------------------------------|
| *Sylvia Rosenfield* | AAA | Yes | Both are arbitrable | Predispute agreement to arbitrate all matters--no stay |
| *Willig* | AAA | No | Petitioner concedes these are arbitrable | Amex Rules inapplicable--no Stay |

Petitioner requests (1) a permanent stay with respect to those claims that are not arbitrable, (2) a stay of all claims barred by the Amex six year eligibility rule,[1] and (3) a stay as to all claims for punitive damages and attorneys' fees.

## A. The Court Must Decide Arbitrability

■ As a threshold matter, the Court must determine whether it or the arbitrator determines arbitrability. Petitioner contends that this is a matter for the court to decide, while respondents contend arbitrability should be left to the arbitrator to decide.

Recently, the Supreme Court concluded that courts should decide the issue of arbitrability unless there is " 'clear and unmistakabl[e]' evidence" that the parties have agreed to submit that issue to an arbitrator. *First Options of Chicago v. Kaplan*, 514 U.S. 938, ——, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995) (quoting *AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 649, 106 S.Ct. 1415, 1418–19, 89 L.Ed.2d 648 (1986) (alteration in the original)). The Second Circuit has found clear and unmistakable evidence that the parties agreed to submit the matter of arbitrability to an arbitrator where, for example, the arbitration agreement provided that "any and all" controversies are to be decided by arbitration. *See PaineWebber Inc. v. Bybyk*, 81 F.3d 1193,

1199 (2d Cir.1996). The *Bybyk* court reasoned that the phrase "any and all" is "elastic enough to encompass disputes over whether a claim is timely and whether a claim is within the scope of arbitration" *id.*, and so it found that the issue of whether or not the respondent's claim was timely and thus eligible for arbitration was a matter for the arbitrator to decide. *Id.* at 1199–1202.

Petitioner argues that because there was no arbitration agreement in *Marriner, Willig* and one of the *Rosenfield* accounts, the *Rosenfield* Trust, there could be no clear and unmistakable evidence that the parties intended to arbitrate the issue of arbitrability. Alternatively, they argue that if the Court finds an arbitration agreement does exist by virtue of Art. VIII Section 1 and Section 2 of the Amex Constitution (the latter, the "Amex Window")[2], this still fails to meet the clear and unmistakable evidence test. This is so, their theory goes, because while the parties had agreed to arbitrate "all controversies arising in connection with petitioners business," eligibility does not qualify as a controversy.[3] *See Spear, Leeds & Kellogg v. Central Life Assurance Co.*, 85 F.3d 21 (2d Cir. 1996). Respondents, on the other hand, argue that there is no distinction between the language in the arbitration agreement that exists here by virtue of the Amex Constitution and the "any and all" language in the

---

1. The Amex six year eligibility rule (Amex Rule 605(a)) provides that no claim will be eligible for arbitration where six years has elapsed from the occurrence or event giving rise to the claim.

2. The Amex Constitution Art. VIII, Sec. 1 provides, in pertinent part:

   Members ... shall arbitrate all controversies arising in connection with their business ... between them and their customers as required by any customer's agreement or, in the absence of a written agreement, if the customer chooses to arbitrate.

   The Amex Constitution further provides that such arbitration "shall be conducted under the arbitration procedures of [the Amex], except ... (c) if

any of the parties to a controversy is a customer, the customer may elect to arbitrate before the [AAA]." Art. VIII, Sec. 2 (the "Amex Window"). Thus, if the customer wishes to arbitrate with an Amex member, it may do so before the AAA rather than the Amex.

3. Petitioner concedes that the arbitration clause in the arbitration agreement for the William Rosenfield account, the Sylvia Rosenfield account and the William and Sylvia Rosenfield Joint Account are similar to the arbitration clause at issue in *Bybyk*, and based on that case the eligibility of these matters should be submitted to the arbitrator. See Petitioner's Supp. Memorandum at p. 8–9. Consequently, petitioner's motion to stay arbitration of these three accounts is denied.

arbitration agreement in *Bybyk,* and therefore, the parties have evidenced a clear and unmistakable intent to arbitrate the issue of arbitrability.

In *Spear, Leeds,* the Second Circuit found an arbitration agreement by virtue of the plaintiff's membership in the New York Stock Exchange (the "NYSE") and the defendant non-member insurance company's demand to arbitrate pursuant to the NYSE rules. Those rules provide in pertinent part:

> Any dispute, claim or controversy between a . . . non-member and a member . . . arising in connection with the business of such member . . . shall be arbitrated under the Constitution and Rules of the [NYSE] as provided by any duly executed and enforceable written agreement or upon the demand of the . . . non-member.

NYSE Rule 600(a). This rule's language is substantially the same as the language in the Amex Constitution Art. VIII, Sec. 1. *See* note 2, *supra,* and even though the parties here did not enter into a written contract, an arbitration agreement between them exists pursuant to petitioner's membership in the Amex, the provisions in the Amex Constitution, and the reasoning in *Spear, Leeds.*

After it determined an arbitration agreement existed, the *Spear* Court (one month after its decision in *Bybyk* ) went on to determine the issue of arbitrability under that agreement. *See id.* at 28–30. Hence, while the Court did not specifically conclude that there is no clear and unmistakable evidence of intent to arbitrate the issue of arbitrability, it implied as much when it took unto itself the issue of arbitrability. *See id.* at 28–30.

Here in *Marriner, Willig* and the *Rosenfield* Trust there was no predispute arbitration agreement like the one in *Bybyk.* Instead, the arbitration agreement existed through the Amex Constitution. Because the Supreme Court requires clear and unmistakable evidence that the parties wish to submit the issue of arbitrability to an arbitrator in order to send that issue to an arbitrator, and because the Second Circuit has im-

plicitly found that no such evidence exists where the parties have an arbitration agreement by virtue of the firm's membership in an exchange, I find that the Court, and not the arbitrator, must determine whether or not these matters are arbitrable.

## B. The Amex Six Year Eligibility Rule Does Not Apply to AAA Arbitrations

■ Petitioner argues that the claims in *Willig* should be stayed as ineligible for arbitration because they are barred by the Amex six year eligibility rule. Respondent contends that this rule does not apply to *Willig* because the arbitration of that matter is before the AAA.[4]

Article VIII, § 2 of the Amex Constitution (the "Amex Window") states:

> Arbitration shall be conducted under the arbitration procedures of this Exchange, except as follows:
>
> (c) if any of the parties to a controversy is a customer, the customer may elect to arbitrate before the American Arbitration Association in the City of New York, unless the customer has expressly agreed, in writing, to submit only to the arbitration procedure of the Exchange.

Both *Willig* and the *Rosenfield* Trust are subject to this provision because they elected to arbitrate before the AAA through the Amex Window. Petitioner argues that although pursuant to the Amex Window, *Willig* and the *Rosenfield* Trust are not bound by the *procedures* of the Amex, they *are* bound by the Amex *rules,* one of which is the six year eligibility rule. Respondents, on the other hand, contend that this distinction is meritless because other Amex rules, such as the requirement that an Amex director of arbitration will appoint an arbitration panel in arbitrations involving public customers, do not apply in Amex Window arbitrations, and therefore neither does the six year eligibility rule.

Two New York cases have found unpersuasive the same argument petitioner makes

---

4. The parties do not address the *Rosenfield* Trust account in this discussion. However, the following reasoning applies there because the *Rosenfield* Trust did not have a predispute arbitration

agreement and filed before the AAA. Because this appears to be an oversight on the parties' part, I include the eligibility of the *Rosenfield* Trust in my decision.

here and have found that the Amex six year eligibility rule is inapplicable to arbitrations that arise through the Amex Window. *See Kidder, Peabody & Co. v. Sanders,* —— A.D.2d ——, 652 N.Y.S.2d 276 (1997); *Kidder, Peabody & Co. v. Sanders,* Index No. 119670/95 (S.Ct. Jan. 8, 1996) (different case).

The plain language of Art. VIII, § 2 provides that where the parties elect to arbitrate before the AAA through the Amex Window, they are not bound by the Amex rules. Moreover, the distinction that petitioner attempts to make between the applicability of rules as opposed to procedures is belied in Art. VIII, § 3, which includes under "Rules of Arbitration" such "procedures" as designating an arbitration director as well as "rules" regarding the arbitrability of a controversy. The Amex fails to distinguish between its rules or procedures; I see no reason for this court to do so. For all of these reasons, the Amex six year eligibility rule does not apply to *Willig* or the *Rosenfield* Trust, and consequently petitioner's petition to stay arbitration in those matters is denied.

The arbitration of the *Marriner* matter, however, was filed before the Amex and is bound by its six year eligibility rule. The arbitration claim was filed on or about September 6, 1995 and claims that arose more than six years prior to that date are barred pursuant to Amex Rule 605(a). In *Marriner,* the September 18, 1989 investment in American Income Partners V–A in the amount of $25,000 survives.

### C. Punitive Damages and Attorneys' Fees

■ Petitioner also argues that claims for punitive damages and attorneys' fees in the *Rosenfield* matter (except for the *Rosenfield* Trust) [5] should be stayed because the predispute arbitration agreements contain a New York choice of law provision and New York law bars arbitration of such awards. Respondents contend that the New York choice of law provision does not bar arbitration of those issues.

In 1995, the Supreme Court decided that a New York choice of law provision in an arbitration agreement does not prevent arbitrators from deciding the issue of punitive damages. *Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995). Furthermore, where an arbitration agreement has no choice of law provision, an arbitrator can decide the issue of punitive damages. *See Mulder v. Donaldson, Lufkin & Jenrette,* 224 A.D.2d 125, 648 N.Y.S.2d 535, 538 (1996); *Lester Schwab Katz & Dwyer v. Yukevich,* 167 Misc.2d 1004, 641 N.Y.S.2d 505, 506–07 (1996). The same reasoning applies to the issue of attorneys' fees. *See PaineWebber Inc. v. Bybyk,* 81 F.3d 1193, 1202 (2d Cir.1996).

Recently, however, this court stayed an arbitration seeking punitive damages. *See Eberle v. BMCA Insulation Products, Inc.,* 1996 WL 337262 (S.D.N.Y. June 19, 1996) (Scheindlin, J.). In *Eberle,* the arbitration agreement included a choice of law provision that stated that the agreement would be "governed by and construed in accordance with the internal laws of the state of New York." *Id.* at * 1. The court concluded that by this language the parties included this provision as an indication that they wished to exclude an award of punitive damages by an arbitrator. *Id.* at *3. The court also found that the rules of the AAA did not have a strong presumption that punitive damages are available in arbitration. *Id.*

Here, the *Rosenfield* parties (except the *Rosenfield* Trust) had an arbitration agreement with the same choice of law provision that was at issue in *Mastrobuono* and which the Supreme Court found did not preclude an arbitrator's award of punitive damages. *See* 514 U.S. at ——, ——, 115 S.Ct. at 1214, 1219. Furthermore, despite the *Eberle* court's finding that the AAA rules do not provide a strong presumption that punitive damages are available, the Second Circuit has found the opposite. *See Fahnestock & Co. v. Waltman,* 935 F.2d 512, 519 (2d Cir. 1991) (in finding that the NYSE rules do not provide a strong presumption of the availabil-

---

5. Petitioner concedes that the Second Circuit's decision in *Bybyk* precludes a stay of arbitration of punitive damages and attorneys' fees in *Willig, Marriner,* and the *Rosenfield* Trust. Accordingly, the petition to stay arbitration of punitive damages and attorneys' fees in those matters is denied.

ity of punitive damages, the court compared them to the AAA rules which they concluded do evidence such a presumption because they provide that "arbitrators may award 'any remedy which [is] just and equitable and within the scope of the agreement'"). Therefore, based on the Supreme Court's unequivocal holding that a New York choice of law provision such as the one at issue here does not bar arbitrators from awarding punitive damages and based on the fact that the arbitration agreement vis a vis the Amex Window has no choice of law provision, the sought for stay with respect to punitive damages and attorneys' fees must be denied.[6]

## II. *Conclusion*

In sum, Petitioner's sought for stay of arbitration of the *Rosenfield* Trust and *Willig* matters on the ground they are barred by the Amex six year eligibility rule is DENIED, as is the stay with respect to punitive damages and attorneys' fees in all three matters. The petition to stay arbitration of the *Marriner* matter, except for the September 18, 1989 investment in American Income Partners V–A in the amount of $25,000, is GRANTED and the petition to stay arbitration with respect to the accounts of William Rosenfield, Sylvia Rosenfield and William and Sylvia Rosenfield Joint Account is DENIED, petitioner having conceded that all issues, including eligibility, in those matters should be arbitrated.

**SO ORDERED.**

---

**6.** Although none of the parties raised the issue, it is worth noting that the rule articulated in *Mastrobuono* is properly applied retroactively here even though it was not the rule when the parties entered into the arbitration agreements. Where, as in *Mastrobuono*, the Supreme Court has announced a rule of federal law and "'appl[ies] that rule with respect to the litigants' before [it], no court may 'refuse to apply [that] rule ... retroactively.'" *Harper v. Virginia Dept. of Taxation,* 509 U.S. 86, 96, 113 S.Ct. 2510, 2517, 125 L.Ed.2d 74 (1993) (quoting *James B. Beam Distilling Co. v. Georgia,* 501 U.S. 529, 540, 111 S.Ct. 2439, 2445–46, 115 L.Ed.2d 481 (1991)).

Moreover, retroactive application of the rule is proper here because it is consistent with the *Mastrobuono* court's rationale for allowing an arbitrator to award punitive damages, namely the concern that "noncommercial customers of brokerage firms ... would not know that they were waiving their right to punitive damages when they signed a standard-form contract with a New York choice of law clause." *Dean Witter Reynolds, Inc. v. Trimble,* 166 Misc.2d 40, 631 N.Y.S.2d 215, 218 (1995) (holding that the *Mastrobuono* rule did not apply where the brokerage firm, represented by counsel, was the party that elected to arbitrate).