**JSC SURGUTNEFTEGAZ,**
Petitioner–Appellant,

v.

**PRESIDENT AND FELLOWS OF HARVARD COLLEGE,**
Respondent–Appellee.

No. 05–4364–CV.

United States Court of Appeals, Second Circuit.

Feb. 15, 2006.

Andrew J. Rossman (Steven M. Pesner, on the brief), Akin Gump Strauss Hauer & Feld LLP, New York, N.Y., for Appellant.

Robert A. Skinner (Harvey J. Wolkoff, Asheesh P. Puri, and Chanel R. Dalal, on the brief), Ropes & Gray LLP, Boston, Mass., for Appellee.

* The Honorable Christopher F. Droney, United States District Judge for the District of Connecticut, sitting by designation.

PRESENT: Hon. GUIDO CALABRESI, Hon. CHESTER J. STRAUB, Circuit Judges, and Hon. CHRISTOPHER F. DRONEY,* District Judge.

## SUMMARY ORDER

Petitioner–Appellant JSC Surgutneftegaz ("Surgut") appeals from the August 3, 2005 decision of the district court (Casey, *J.*) denying Surgut's petition for a stay of arbitration, and thereby allowing the class arbitration demanded by Respondent–Appellee the President and Fellows of Harvard College ("Harvard") to proceed. Harvard has an ownership interest in Surgut, a large Russian oil and gas company, in the form of American Depositary Receipts ("ADRs"), negotiable certificates issued by the Bank of New York ("the Bank") that represent shares of Surgut preferred stock which are deposited with the Bank. The relationship between Surgut, the Bank, and ADR holders is governed by a Deposit Agreement that contains an arbitration clause. Under this clause, and on behalf of all Surgut preferred stock ADR holders, Harvard seeks to arbitrate several claims relating to Surgut's failure to pay dividends in accordance with its charter and the prospectus for the preferred stock.

We assume the parties' familiarity with the facts, the procedural history, and the specification of issues on appeal.

We must deny the stay either (1) if we conclude that the arbitrability *vel non* of Harvard's claims should itself be decided by an arbitrator, or (2) if we conclude that arbitrability is a question for the court to decide, and that Harvard's claims are in-

deed subject to arbitration under the Deposit Agreement. With respect to the first question, we refer the issue of arbitrability to an arbitrator only if "there is clear and unmistakable evidence from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator." *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1198–1199 (2d Cir.1996) (internal quotation marks omitted). Here, we believe that the extremely broad terms of the Deposit Agreement's arbitration clause plainly evince an intent to have the question of arbitrability decided by an arbitrator.[1] *See Bell v. Cendant Corp.*, 293 F.3d 563, 568 (2d Cir.2002).

The intent of the parties to commit the question of arbitrability to the arbitrator is further demonstrated by the incorporation of the rules of the American Arbitration Association ("AAA") that empower the arbitrator to determine issues of arbitrability. *See Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208 (2d Cir.2005). Surgut's argument that the 1996 version of the AAA's Commercial Rules does not contain such a clause is inapposite because Rule 1 of that version provides that the "rules and any amendment of them shall apply in the form obtaining at the time the demand for arbitration or submission agreement is received by the AAA." Even were we to believe that it was for the district court to decide arbitrability, we would still reach the same result—denial of the stay—as Harvard's claims plainly "relat[e] to the [Surgut] Shares," and hence, are subject to arbitration.[2]

We have considered all of Surgut's arguments, in particular those based on international comity and the internal affairs doctrine, and find them all to be without merit. Accordingly, we AFFIRM the judgment of the district court.

---

**1.** The arbitration clause reads, in relevant part, "[a]ny controversy, claim or cause of action brought by any party hereto against [Surgut] arising out of or relating to the Shares or other Deposited Securities, the American Depositary Shares, the Receipts or this Agreement, or the breach hereof or thereof, shall be finally settled by arbitration. . . . "

**2.** Nor does a statement in the arbitration clause that securities law claims "may, but need not, be submitted to arbitration" mean that Harvard's securities law claim may be arbitrated only with Surgut's consent. (Harvard accused Surgut, *inter alia,* of misrepresentation or omission of a material fact, in violation of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b–5.) Read in light of the presumption in favor of arbitrability, *see Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.,* 198 F.3d 88, 99 (2d Cir.1999), and in contrast with the mandatory arbitration language governing other claims, this phrase is better understood to give the complaining party a choice between submitting a securities claim to arbitration or bringing suit.

Moreover, the existence of a New York choice of law clause in the Deposit Agreement does not, without more, mean—under New York law—that the New York rule that the court must decide questions of timeliness has been adopted. As a result, Surgut's statute of limitations defense is also properly addressed to the arbitrator. *See Bybyk,* 81 F.3d at 1199–1202; *Diamond Waterproofing Sys., Inc. v. 55 Liberty Owners Corp.,* 4 N.Y.3d 247, 793 N.Y.S.2d 831, 826 N.E.2d 802, 805 (2005).