**OPERATIVE PLASTERERS & CEMENT MASONS INTERNATIONAL ASSOCIATION, AFL–CIO and Local 530 of Operative Plasterers & Cement Mason International Association, Plaintiffs,**

v.

**INTERNATIONAL BROTHERHOOD OF PAINTERS AND ALLIED TRADES, Local Union 1486 of Long Island, International Brotherhood of Painters & Allied Trades, AFL–CIO, and District Council 9, Defendants.**

No. 97–CV–0435 (FB).

United States District Court,
E.D. New York.

Feb. 7, 1997.

Brian E. Maas, Beldock Levine & Hoffman L.L.P., New York City, for Plaintiffs.

Barbara L. Camens, Barr, Peer & Camens, Washington, D.C., (Tunick, Kupferman & Creadore, P.C., New York City, of counsel), for Defendants.

### MEMORANDUM AND ORDER

BLOCK, District Judge:

This is the latest chapter in an ongoing jurisdictional dispute between unions representing plasterers, plaintiffs Operative Plasterers & Cement Masons International Association and its affiliates ("Plasterers" or "Local 530"), and unions representing painters, defendants International Brotherhood of Painters and Allied Trades and its affiliates ("Painters" or "Local 1486"), as to which union has the right to perform certain drywall finishing work referred to by the parties as "skimcoating." In the current dispute, the Plasterers challenge the right of Local 1486 to continue skimcoating work at the Nordstrom's Department Store construction project ("Nordstrom's Project") currently in progress at Roosevelt Field, Long Island. The Plasterers request that the Court either issue an order compelling the Painters to submit to arbitration in ac-cordance with the Plan for the Settlement of Jurisdictional Disputes in the Construction Industry ("National Plan"), or, in the alternative, assume jurisdiction under Section 301 of the National Labor Relations Act and decide the underlying dispute without the aid of arbitration. Under either approach, plaintiffs further seek a preliminary injunction to preserve the status quo while the jurisdictional dispute is resolved.

### BACKGROUND

Both the Plasterers and the Painters are members of the AFL–CIO and the AFL–CIO's Building Construction Trades Department ("Department"). The AFL–CIO Constitution directs each union to respect the "jurisdiction," *i.e.*, entitlement to perform specific work tasks, of other member unions. This dictate contemplates that all construction work can be categorized and distributed among the respective unions. The Department's Constitution provides that all disputes between member unions are to be resolved pursuant to the National Plan. The National Plan establishes procedures and guidelines for the resolution of jurisdictional disputes through arbitration. Further, Article VIII of the National Plan recognizes local labor dispute resolution organizations, and provides that where a local plan is recognized by the Department, the local board should hear all jurisdictional disputes in the first instance. If a local plan declines to hear a case, it may be reviewed under the National Plan. Importantly, whether or not a dispute is decided at the local or national level, all relevant unions and contractors must have agreed to be bound by the particular arbitration plan.

The Plasterers initiated this case upon learning that the contractor assigned to do the skimcoating work at the Nordstrom's Project, Island Taping, Inc. ("Island Taping"), had hired the Painters' Local 1486 rather than the Plasterers' Local 530. The Plasterers initially sought relief from the Building & Construction Trades Council of Greater New York ("New York Board"), a local board recognized by the Department, which administers the New York Plan for the Settlement of Jurisdictional Disputes ("New

York Plan"). In a letter dated December 31, 1996, the President of the New York Board informed the Plasterers that "it would be to no avail to hold another hearing on this dispute that has been ongoing for nearly twelve years." (Letter from Edward J. Malloy to John Dougherty, dated December 31, 1996). The New York Board further told the Plasterers that it "acquiesces to the [National Plan] to arbitrate the dispute...." *Id.*

The Plasterers accordingly brought this dispute to a National Plan arbitrator, seeking a decision on the merits of the jurisdictional dispute. Instead, the arbitrator, in a decision dated January 9, 1997, held that the dispute was not arbitrable under the National Plan. The arbitrator offered two reasons to support this conclusion. First, the dispute was not arbitrable because Island Taping had not "stipulated" to, *i.e.*, had not agreed to be bound by, the National Plan.[1] Second, the arbitrator found that defendant Local 1486 was not "affiliated" with the New York Board, and therefore had not agreed to be bound by the New York Plan. Thus, even though Island Taping had agreed to be bound by the New York Plan, Local 1486's lack of affiliation with the New York Board rendered the case inarbitrable for want of a plan where all relevant parties had agreed to submit to arbitration.[2] Plaintiffs requested reconsideration of this decision on January 8, 1997; this request was denied on January 16, 1997.

Plaintiffs contest the validity of the second arbitrability decision, arguing that the arbitrator erroneously determined that Local 1486 is not affiliated with the New York Plan, and further, that the arbitrator lacked authority to decide the arbitrability of this dispute. Accordingly, plaintiffs contend, his decision is not binding on the Court. Defen-

---

**1.** The arbitrator found that Island Taping had, however, stipulated to the New York Plan.

**2.** Specifically, the arbitrator held:
Local union 1486 of the Painters union, the Painters union in this dispute, is not affiliated with the Building and Construction Trades Council of New York. Island Taping, Inc. is stipulated to the New York City plan only. Since Island Taping, Inc. is not stipulated to the national plan the case cannot be brought to the national plan as a new case.

---

dants, in response, argue that the arbitrator was authorized under the National Plan to decide arbitrability and that the Court must defer to his decision. The threshold issue presented to the Court, therefore, is whether the arbitrator or this Court is to determine the arbitrability issue. The Court looks to the National Plan, to which both parties are bound, to determine whether the arbitrator was authorized to decide questions of arbitrability.

## DISCUSSION

■■■ In *First Options of Chicago, Inc. v. Kaplan,* the Supreme Court specifically addressed the question of who has the primary power to determine whether parties to an arbitration agreed to arbitrate the merits of a dispute. 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). *First Options* compels this Court to determine: "Did the parties agree to submit the arbitrability question itself to arbitration." *Id.* at ——, 115 S.Ct. at 1923. If the parties did agree to submit the arbitrability question to arbitration, then courts must, with limited exceptions, defer to the arbitrator's arbitrability determination. *See id.* at ——, 115 S.Ct. at 1924. If they did not agree to arbitrate arbitrability, "then the court should decide that question just as it would decide any other question that the parties did not submit to arbitration, namely independently." *Id.*

■■■ When deciding whether the parties agreed to arbitrate the issue of arbitrability, courts "should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *First Options of Chicago,* at ——, 115 S.Ct. at 1924 (quoting *AT & T Technologies v. Communications Workers of*

---

THE DECISION:
The case cannot be brought to the national plan on appeal since local union 1486 of the Painters union is not affiliated with the Building and Construction Trades Council of Greater New York. The New York plan, therefore, would not have heard the case in the first instance.
(Decision of Arbitrator Kardy, dated January 9, 1997).

*America,* 475 U.S. 643, 649, 106 S.Ct. 1415, 1418–19, 89 L.Ed.2d 648 (1986)); *see Paine-Webber Inc. v. Bybyk,* 81 F.3d 1193, 1198–99 (2d Cir.1996) ("[A]rbitrability of a given issue is a question for the court unless there is 'clear and unmistakable' evidence from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator."). Accordingly, unlike situations revolving around questions of whether merits-related disputes are within the scope of a valid arbitration agreement, silence or ambiguity as to the question of arbitrability renders the court the primary decisionmaker. *Id.* at ——, 115 S.Ct. at 1924; *see McLaughlin Gormley King Co. v. Terminix Int'l Co.,* 105 F.3d 1192, 1193–94 (8th Cir.1997). "Any other rule would 'too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide.'" *Id.* (quoting *First Options,* at ——, 115 S.Ct. at 1925).

Painters assert that several provisions of the National Plan evidence an agreement to empower the arbitrator to determine whether the unions have agreed to submit the issue of arbitrability to an arbitrator. Specifically, they point to Article IV, section five, of the National Plan, which provides in pertinent part:

> The Administrator shall only process cases in which all parties to the dispute are stipulated to the Plan in accordance with Article II or, upon the filing of a dispute, become stipulated to the Plan in accordance with Article II. In the Administrator's sole discretion, the issue of stipulation may be submitted to an Arbitrator....

The Painters argue that this provision vests the arbitrator "with the authority to decide all issues of stipulation referred by the Plan Administrator, i.e., which parties are consensually bound and therefore, which disputes are covered by the terms of the Plan." (Def.Mem. of L. at 3–4.) The Court disagrees. The above-quoted language of Article IV evidences an agreement to allow an arbitrator to decide whether parties have *stipulated* to the National Plan in accordance with Article II of the plan. But Article II relates solely to the stipulations of employers and employer associations to the National Plan, and does not address the affiliation of unions with the National Plan or any local plans.

Construing the National Plan as a whole, the Court determines that section five of Article IV does not authorize an arbitrator to make all arbitrability decisions. Throughout the National Plan, the words "stipulate" or "stipulated" are used only in connection with employers and employer associations that have agreed to be bound by the National Plan. *See, e.g.,* National Plan at 1–2, 13–15, 25–28. By contrast, the word "affiliated" is consistently used throughout the National Plan to define unions that have agreed to abide by its precepts. *See, e.g.,* National Plan at 1, 13–15, 26–28. Thus, while section five of Article IV authorizes an arbitrator to determine arbitrability in the context of whether an employer or employer association has stipulated to the plan, it does not constitute an agreement authorizing an arbitrator to determine whether a union is affiliated with the National Plan.

■ The Painters also argue that section two of Article VII and section two of Article IX constitute "clear and unmistakable" evidence that the arbitrator was authorized to decide arbitrability. These provisions, respectively, read in pertinent part: "Any decision or interpretation rendered by an arbitrator shall be immediately accepted and complied with by all parties subject to this Agreement," and "The Department and each of its affiliated unions agree that all cases, disputes or controversies involving jurisdictional disputes and assignments of work under this Agreement shall be resolved as provided, herein...." With regards to the language of section two of Article VII, the Court disagrees with the Painters that this alone insulates any determination made by an arbitrator pursuant to the National Plan. Such a conclusion would be against the plain holding of *First Options.* If an issue is properly before an arbitrator, its determinations are binding on the parties and generally not subject to judicial review. *First Options,* at ——, 115 S.Ct. at 1923. However, the binding nature

of this language only attaches to decisions regarding subject matter properly before the arbitrator for determination. *Id.* at ——, 115 S.Ct. at 1924. This section alone does not determine which disputes are properly decided by the arbitrator in the first instance, and thus is not "clear and unmistakable" evidence that an arbitrator is empowered to determine questions of arbitrability. *Id.*

The Court concludes that the language of section two of Article IX is equally unavailing. It merely states that arbitration is the exclusive mechanism for resolving disputes within the subject matter of the National Plan. While the dispute at issue does ultimately concern a jurisdictional matter, *i.e.*, which union is entitled to perform skimcoating work, this language falls short of a "clear and unmistakable" statement necessary to extend the authority of an arbitrator to make a decision pertaining to the affiliation of a union. In making this determination, the Court notes the recent decision by the Court of Appeals for the Eighth Circuit in *McLaughlin Gormley*, which interpreted broad language similar to that of section two of Article IX and found that it fell short of a "clear and unmistakable" statement that the arbitrator should determine arbitrability. *McLaughlin Gormley*, 105 F.3d 1192, 1193. The language before the court in that case provided for arbitration of "[a]ny controversy arising out of, or relating to this Agreement or any modification or extension hereof." *Id.* The court rejected the contention that this language authorized the arbitrator to determine arbitrability because "[t]he arbitration clause made no mention of a 'controversy' over arbitrability." *Id.* at 1193–94. Similarly, in the present case, there is no mention of a "case," "dispute," or "controversy" *over arbitrability* in section two of Article IX.

Nor can the Painters draw comfort from the decision of the Court of Appeals for the Second Circuit in *PaineWebber*. In that case, the court dealt with the arbitrability of whether a specific statute of limitations applied to the defendant's claims. The court found that the broad language of the arbitration agreement authorized arbitration on the statute of limitations issue. *PaineWebber*, 81 F.3d at 1198–99. That case is distinguishable because arbitrability of the statute of limitations defense was essentially related to the merits of the subject matter that the parties agreed to arbitrate and as such differs from this case, where the issue is whether the arbitrator had the authority to determine whether the parties agreed to arbitrate the merits of the dispute itself. *See National Union Fire Ins. Co. v. Belco Petroleum Corp.*, 88 F.3d 129, 135–36 (2d Cir.1996) (stating that affirmative defenses such as a time limit in the arbitration agreement or laches are decisions concerning the merits of a dispute and are properly decided by arbitrators under broad arbitration clauses); *Aircraft Braking Systems Corp. v. Local 856*, 97 F.3d 155, 160 (6th Cir.1996) ("The 'arbitrability' dispute at issue here is not a dispute concerning the scope of an arbitration clause in an otherwise valid agreement, but rather is a dispute as to whether a valid agreement to arbitrate exists at all. This question traditionally has been answered by the courts."). It is the latter situation which *First Options* addressed in holding that the court must conduct an independent review absent "clear and unmistakable" evidence to the contrary. *First Options*, at ——, 115 S.Ct. at 1924. As such, the broad language held to authorize arbitration as to an aspect of the merits in *PaineWebber* is insufficient here.

To sum up, the Court is faced with the following situation: (1) the employer, Island Taping, is not stipulated to the National Plan; (2) both unions in this dispute are affiliated with the National Plan; (3) both the Plasterers and Island Taping have agreed to be bound by the New York Plan; and (4) if Local 1486 is affiliated with the New York Plan, then all parties to this dispute are bound by the New York Plan, and consequently, all parties are bound to arbitrate under the National Plan on appeal from the New York Board's refusal to arbitrate. Accordingly, the Court must hold a hearing to determine *de novo* whether Local 1486 is affiliated with the New York Plan; if they are, then the present dispute is arbitrable under the National Plan.

On the issue of injunctive relief, the Court declines to order at this time the preliminary injunction requested by plaintiffs pending the hearing on the arbitrability issue. The Court notes that if this dispute is arbitrable, it has the power, if circumstances warrant, to issue injunctive relief to aid arbitration. *See Boys Markets, Inc. v. Retail Clerks Union,* 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970). An interesting question is whether the Court has the power to issue equitable relief pending the determination of arbitrability itself by the Court. *Cf. Video Tutorial Servs. v. MCI Telecommunications,* 79 F.3d 3, 5 (2d Cir.1996) ("We would be hard pressed to say that a district court cannot stay arbitration for a short time while familiarizing itself with the issues underlying a proposed motion to stay a suit pending arbitration, or a proposed motion to stay an arbitration."). In any event, a preliminary injunction is not warranted at this time. It is well settled that "preliminary injunctive relief is appropriate when the movant shows (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *International Dairy Foods Ass'n v. Amestoy,* 92 F.3d 67, 70 (2d Cir.1996). The Court determines that plaintiffs have failed to show that they will suffer irreparable harm if the Court declines to enter injunctive relief because it is unclear at the present time whether the skimcoating work in dispute has commenced at the Nordstrom's Project. Counsel for both sides were equivocal during the hearing before this Court on February 4, 1997 as to whether this work has begun; plaintiffs' counsel stated that "they obviously could start the work tomorrow, or not," and defendants' counsel stated that she "didn't know" whether the skimcoating work in dispute had begun. The Court therefore declines to issue equitable relief at this time.

Because the Court declines to grant injunctive relief at this time, it need not determine whether Island Taping must be brought in as an essential party to this litigation. At the hearing, the parties should address whether such joinder would be necessary should the Court later find it appropriate to order equitable relief.

## CONCLUSION

The Court determines that the issue of whether this dispute is arbitrable was not clearly and unmistakably delegated to the arbitrator under the National Plan, and therefore concludes that it must make an independent determination on the arbitrability issue. This will entail a factual determination as to whether Local 1486 is affiliated with the New York Plan, and therefore bound to arbitrate under the National Plan. Counsel for the parties are hereby ordered to appear for a hearing on this issue on February 10, 1997 at 10:00 a.m. in Courtroom # 15 on the 1st floor of the Federal Courthouse, 225 Cadman Plaza East, Brooklyn, New York.

**SO ORDERED.**