VAC SERVICE CORPORATION,
Plaintiff,

v.

SERVICE MERCHANDISE COMPANY,
INC., Defendant.

SERVICE MERCHANDISE COMPANY,
INC., Counterclaim Plaintiff,

v.

VAC SERVICE CORPORATION, American Bankers Insurance Company of Florida, and Continental Insurance Company, Counterclaim Defendants.

No. 95 CV 9425.

United States District Court,
S.D. New York.

June 4, 1996.

Michael S. Oberman, Geoffrey Potter, Kramer Levin Nattalis Nessen Kamin & Frankel, New York City, Burt S. Bluestein, Middletown, NY, for Plaintiff.

Kevin J. Burke, Cahill Gordon & Reindel, New York City, Andrew V. Tramont, Jr., Jorden Burt Berenson & Johnson, Miami, FL, for Defendant.

Gregory Ikonen, Kay Collyer & Boose, New York City, Stuart Aaron, Dorsey & Whitney, New York City, for Defendant American Bankers Insurance Co. of Florida.

## MEMORANDUM DECISION AND ORDER

PARKER, District Judge.

Before the Court is the motion of Counterclaim Defendant Continental Insurance Company ("Continental") to stay proceedings on the ground that there is an enforceable arbitration agreement with Defendant/Counterclaim Plaintiff Service Merchandise Corporation Inc. ("SMC").

## FACTS

This action arises out of a contract dispute between Plaintiff, VAC Service Corporation ("VAC") and SMC. VAC is a New York corporation in the business of marketing extended replacement Service Agreements to retail consumers of home electronic and appliance products. SMC sells consumer products, including electronic goods and jewelry, through catalogs and though a national chain of retail outlets throughout the United States.

According to the Amended Complaint, some time in 1988, VAC and SMC agreed that VAC would replace certain SMC merchandise, including watches, in exchange for a fee. The terms of the agreement were memorialized in Dealer Agreements, covering May 19, 1991 through July 31, 1995. The Dealer Agreements included a clause, requiring VAC to maintain insurance, ostensibly to protect against VAC's failure to perform its obligations. From 1993–1995, VAC contracted with Continental to provide this insurance. On July 31, 1995, SMC terminated VAC as its administrator.

In its complaint, VAC charges that SMC violated contractual obligations by practices such as encouraging its sales associates to instruct SMC customers as to how to defraud VAC. In its answer, SMC denied in substance VAC's allegations and claimed to have fully performed its contractual obligations. Additionally, SMC counterclaimed against VAC, alleging that as of January 15, 1996, VAC owed SMC $1,302,486.80 for replacement merchandise for SMC customers. In that counterclaim, SMC also sought recovery from VAC's insurance carriers, including Continental, claiming that its policy indemnified SMC against losses caused by VAC's breach. Presently before the Court is Continental's motion to stay this proceeding pending arbitration of SMC's claims against Continental.

## DISCUSSION

The Continental Policy provides:

Any controversy arising out of or relating to this insurance, or breach thereof, shall be submitted to arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association. The decision rendered by the Arbitrator(s) will be binding. Each party will pay the expenses of [its] arbitrator and bear the expenses of the American Arbitration Association.

As a threshold matter, the Federal Arbitration Act ("the Act") provides that arbitration clauses in contracts involving interstate commerce are enforceable absent appropriate legal or equitable grounds for nonenforcement. 9 U.S.C. § 2. "The effect of [this] section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983).

The Act further requires the courts to stay proceedings if the issues presented are covered by an arbitration agreement and to compel arbitration in the event of a refusal to comply with a valid agreement to arbitrate. 9 U.S.C. §§ 3, 4. A rather extensive body of caselaw emphasizes that these provisions underpin an important, liberal federal policy favoring arbitration. *Bernhardt v. Polygraphic Co. of America*, 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956); *Collins & Aikman Products Co v. Building Systems*, 58 F.3d 16, 19 (2d Cir.1995); *Cotton v. Slone*, 4 F.3d 176, 180 (2d Cir.1993). The Act greatly circumscribes judicial discretion, and with some considerable consistency, the cases mandate that the courts direct parties to arbitration over issues arguably covered by arbitration agreements. *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218, 105 S.Ct. 1238, 1241, 84 L.Ed.2d 158 (1985); *Collins*, 58 F.3d at 19; *Cotton*, 4 F.3d at 180.

The initial inquiry is "whether the parties agreed to arbitrate, and if so, whether the scope of that agreement encompasses the asserted claims." *Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*, 991 F.2d 42, 45 (2d Cir.1993). Of some significance to this motion is the principle that any doubts concerning the scope of arbitrable issues "should be resolved in favor of arbitration, whether the problem at hand

is the construction of the contract language or an allegation of waiver, delay or a like defense of arbitrability." *Shearson Lehman Hutton, Inc. v. Wagoner,* 944 F.2d 114 (2d Cir.1991) (presumption of arbitrability is so strong that arbitration will be ordered even if claim appears frivolous) (citing *AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 649–50, 106 S.Ct. 1415, 1418–19, 89 L.Ed.2d 648 (1986); *Government of United Kingdom v. Boeing Co.,* 998 F.2d 68, 72 (2d Cir.1993) (arbitration agreements enforced even if such enforcement creates inefficiencies or piecemeal litigation).[1]

■ As a preliminary matter, where a contract contains an arbitration clause, there is a presumption of arbitrability that is overcome only by a definitive showing that the dispute in question is outside the arbitration clause. *Associated Brick Mason Contractors of Greater New York, Inc. v. Harrington,* 820 F.2d 31, 35 (2d Cir.1987); see also *Concourse Village, Inc. v. Local 32E, Service Employees Int'l Union,* 822 F.2d 302, 304 (2d Cir.1987) ("unless it can be said 'with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute,' the dispute should be submitted to arbitration") (quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960)).

■ The arbitration provision in the Continental policy is broad. It specifies that "any controversy arising out of or relating to" the Continental Policy "shall be submitted to arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association." See *Paine-Webber Inc. v. Bybyk,* 81 F.3d 1193, 1199 (2nd Cir.1996) ("the meaning of these words is plain indeed: any and all controversies are to be determined by arbitration. The wording is inclusive, categorical, unconditional and unlimited. The words "any and all" are elastic enough to encompass disputes over whether a claim is timely and whether a claim is within the scope of arbitration"); see

also *Shearson,* 944 F.2d at 121 ("when the contract contains a 'broad' arbitration clause" . . . that purports "to refer all disputes arising out of a contract to arbitration, the strong presumption of arbitrability applies with even greater force") (citations omitted).

This quite broad language, buttressed by a strong federal presumption favoring arbitration, requires SMC to arbitrate unless it can show that its dispute with Continental is, somehow, outside the scope of the arbitration clause. See *Shearson,* 944 F.2d at 121–122. SMC has made no such showing. SMC's efforts in this regard are complicated by the arguments it marshalled in opposition to Rule 12(b)(6) motions. SMC maintained that the contract of insurance between Continental and VAC expressly benefited SMC, affording it protection and various rights, including the right of recovery for breach. SMC argued that the policy itself insures for losses to property covered by the dealer agreement between VAC and SMC. Specifically, it noted that the policy insures losses to property covered under an "insured service contract." As defined in the policy, an "insured service contract" was a service contract on "property" entered into by a "dealer" and a "purchaser" of the service agreement. SMC claims to be a dealer and the policy defines "dealer" as:

> a party who has entered in a "dealer agreement" with [VAC] is shown as a dealer on a certificate attached to this insurance, sells "property" and "insured service contracts" on that "property" and is located outside the State of Florida.

Moreover, SMC notes that the certificate attached to the Continental policy names SMC as the certificate holder and bears Continental's policy number. The certificate defines "dealer agreement" as "an agreement entered into between [VAC] and [SMC] under which [VAC] agrees to administer certain repair obligations assumed under "insured service contracts." Thus, the arguments SMC used to tie it to the policy send it to arbitration.

---

1. The question of whether a party is bound by an arbitration clause is governed by federal law which has "preserved general principles of state

contract law as rules of decision on whether parties have entered an agreement to arbitrate." *Progressive,* 991 F.2d at 46 (citations omitted).

SMC nevertheless contends that it is not subject to arbitration because the insurance agreement provides that a party to the contract may be "sued" [2], a term said to require a court case, not arbitration. We disagree. The clause provides that "a person or organization may sue [Continental] to recover on a claim" but does not specify the manner in which such claims are to be asserted or the forum in which they are to be brought. While the terms used are those more commonly associated with suits in court as opposed to claims in arbitration, that choice of language falls short of the supplying the "positive assurance" that this language was intended to qualify an otherwise encompassing and unambiguous arbitration clause. See *Storey v. Shearson–American Express*, 928 F.2d 159, 163 (5th Cir.1991) (contract provision that covers service of process, jurisdiction, and cost issues in the event of legal action ... does not reduce the broad scope of the arbitration clause, which mandates arbitration of 'any controversy arising out of or relating to' the account).

### CONCLUSION

In conclusion, Continental's motion to stay the proceeding pending arbitration is granted.

**SO ORDERED.**

---

2. A person or organization may sue us to recover on a claim but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance.