**RELIANCE NATIONAL INSURANCE COMPANY, Petitioner,**

v.

**SEISMIC RISK INSURANCE SERVICES, INC., Respondent.**

**No. 97 Civ. 1722 (RWS).**

United States District Court, S.D. New York.

April 16, 1997.

---

Jones Hirsch Connors & Bull, New York City (Warren A. Herland, Bruce Handler, of counsel), for Petitioner.

Bressler, Amery & Ross, New York City (Brian F. Amery, of counsel), Tuttle & Taylor, Los Angeles (Michael Bierman, of counsel), for Respondent.

## OPINION

SWEET, District Judge.

Petitioner Reliance National Insurance Company ("Reliance") has sought to enforce an arbitration agreement with Respondent Seismic Risk Insurance Services, Inc. ("Seismic") and to enjoin the prosecution of an action initiated by Seismic in the Superior Court for the State of California against Reliance. For the reasons set forth below and upon all the prior proceedings had herein, the motion is granted.

### PRIOR PROCEEDINGS

As more fully set forth below, the parties entered into a Profit Managers Agreement and a Profit Commissions Agreement on May 11, 1992, the first containing an arbitration agreement and the second devoid of such an agreement. The parties disagreed with respect to the implementation of the agreements and the agreements were terminated by Reliance on October 22, 1992.

On November 21, 1996 Seismic commenced an action entitled *Seismic Risk Insurance Services Inc. v. Reliance National Insurance Company* in the Superior Court of the State of California, County of Los Angeles, case no. BC 161255 (the "California action") and on the following day filed a demand for arbitration.

On January 10, 1997 Reliance filed the instant petition and by order to show cause brought on its motion to enforce the arbitra-

tion agreement and to enjoin the California action. The motion was heard and considered fully submitted on January 22, 1997.

### THE FACTS

#### The Parties

Reliance is an insurance company organized and existing under the laws of the State of Delaware, with its principal place of business in New York. Seismic is a corporation organized and existing under the laws of the State of California with its principal place of business in the County of Los Angeles.

#### The Agreements

Reliance and Seismic began negotiation in February 1992 to reach an agreement under which Seismic would solicit, advertise, underwrite, and bind earthquake insurance in California on behalf of Reliance. On February 27, 1992, Reliance sent Seismic a letter enclosing a discussion draft of a proposed agreement which made reference to two different forms of compensation for Seismic: (1) a conventional production and administration commission, based on the generation of policies; and (2) an additional "profit" commission to be based on the profitability of the policies Seismic originated.

The draft specified the production and administration commission as 25% of gross written premiums received by Reliance on policies bound or written by Seismic, but did not set forth any terms for the profit commission. The discussion draft also contained an arbitration clause to which Seismic objected.

Thereafter, Reliance determined that the profit commission was not a proper subject for an agreement covering the relationship between the parties and that the profit commission should be provided for in a separate agreement. On March 30, 1992, Reliance sent Seismic a separate draft with respect to the contemplated profit commission which provided that Seismic would earn a profit commission of up to 5% on the business underwritten by Seismic during any calendar year.

On May 11, 1992, Reliance and Seismic entered into the Program Manager Agreement which provided that Seismic, on behalf of Reliance, would solicit, underwrite and bind business in the territory of California relating to earthquake insurance.

Under the terms of the Program Manager Agreement (at Article VI), the computation of Seismic's compensation for its services rendered under that agreement was comprised of three specified elements: (i) production and administration commissions (Art. VI.A); (ii) unearned commissions (Art. VI.B); and (iii) profit commissions (Art. VI.C).

The Program Manager Agreement (at Art. VI.C) specifically provided as follows:

> [Seismic] will earn a profit commission while this Agreement is in force in accordance with and subject to the terms and conditions of a Profit Commission Agreement to be entered into by and between [Seismic] and [Reliance].

The Program Manager Agreement (at Art. XIX) contains an arbitration clause. Article XIX.A provides as follows:

> *Submission to Arbitration* As a condition precedent to any right of action hereunder, any dispute arising out of this Agreement shall be submitted to the decision of a board of arbitration composed of two arbitrators and an umpire meeting in New York unless otherwise mutually agreed.

Also on May 11, 1992, and as expressly contemplated in the Program Manager Agreement, Reliance and Seismic also entered into the Profit Commission Agreement.

The Profit Commission Agreement states:

> WHEREAS, [Seismic] and [Reliance] have entered into a Program Manager Agreement (the "Program Manager Agreement") of even date with this Agreement pursuant to which [Seismic] will solicit, underwrite and bind business on behalf of [Reliance] all in accordance with the terms of the Program Manager Agreement; and
>
> WHEREAS, [Seismic] and [Reliance] wish to establish a contingent commission plan whereby [Seismic] will be eligible to earn a profit commission (the "Profit Commission") on the business underwritten and bound by [Seismic] pursuant to the Program Manager Agreement.
>
> NOW, THEREFORE, [Seismic] and [Reliance] agree as follows:

## 1. BUSINESS SUBJECT TO AGREEMENT

This Agreement is limited in its application to the lines of business that are the subject of the Program Manager Agreement. [Profit Commission Agreement, p. 1].

The Program Manager Agreement provided for Seismic to hold certain insurance premiums as trust funds in a fiduciary account with a member of the Federal Reserve System and calls for the use of the interstate mails in the performance of the agreement.

On October 22, 1992, Reliance terminated its contract and relationship with Seismic as of December 31, 1992 based on an alleged inability to obtain reinsurance.

On or about November 21, 1996, Seismic commenced the California action seeking damages in the amount of $963,237. Recovery of these damages included both commissions under the Program Manager Agreement and profit commissions under the Profit Commission Agreement. Seismic contends that if the Program Manager Agreement had not been prematurely terminated, it would have satisfied the "gross premium target" of $15,000,000 per year entitling it to a higher percentage profit commission.

On or about November 22, 1996, Seismic served upon Reliance a demand for arbitration in accordance with Article XIX of the Program Manager Agreement, seeking recovery of not only $642,158 in purported production and administration commissions, but also $321,079 in profit commissions that would allegedly have been earned and become due if the Program Manager Agreement was not, as Seismic claims, improperly terminated on insufficient notice on December 31, 1992.

In response to Seismic's demand, Reliance served its own demand, pursuant to letter dated December 4, 1996, demanding arbitration of the claim for profit commissions, which is the subject of Seismic's California action.

## DISCUSSION

### The Arbitration Clause in the Program Manager Agreement Applies

■ The Federal Arbitration Act ("FAA"), 9 U.S.C., §§ 1, *et seq.*, applies to any arbitration agreement evidencing a transaction involving interstate commerce (9 U.S.C. § 2), and "signals an intent to exercise Congress' commerce power to the full." *Allied–Bruce Terminix Companies v. Dobson*, 513 U.S. 265, 277, 115 S.Ct. 834, 841, 130 L.Ed.2d 753 (1995).

■ The Program Manager Agreement plainly involves interstate commerce, and accordingly, the FAA governs. *Metro Industrial Painting Corp. v. Terminal Construction Co.*, 287 F.2d 382 (2d Cir.), *cert. denied*, 368 U.S. 817, 82 S.Ct. 31, 7 L.Ed.2d 24 (1961); *see also Maye v. Smith Barney Inc.*, 897 F.Supp. 100, 105 (S.D.N.Y.1995) (FAA applies to agreement where parties "were required to use and did use various instrumentalities of interstate commerce, including the mail, telephone and various electronic telecommunications systems . . .").

The FAA has been held "to create a body of federal substantive law of arbitrability, applicable to any agreement within the coverage of the Act." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). The FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . ." *Id.*

■ "Contracts to arbitrate are not to be avoided by allowing one party to ignore the contract and resort to the courts. Such a course could lead to prolonged litigation, one of the very risks the parties, by contracting for arbitration, sought to eliminate." *Southland Corp. v. Keating*, 465 U.S. 1, 10, 104 S.Ct. 852, 858, 79 L.Ed.2d 1 (1984). Accordingly, a party is bound by the provisions of an arbitration agreement that it signs. *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840 (2d Cir.1987).

■ In this case, the FAA and the plain terms of the parties' arbitration agreement require that Seismic's state court claims with respect to the cancellation of the Program Manager Agreement be compelled to arbitration.

### The Arbitrators Should Determine The Arbitrability Of The Issues Surrounding The Profit Commission Agreement

Section 4 of the FAA provides that on a petition to compel arbitration, "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." As this Court has held in deciding a petition to compel arbitration,

> the Court may consider only two questions: first, whether the parties have executed an arbitration clause covering the dispute in issue; and second, whether one party has refused to abide by the arbitration clause ... If both questions are answered in the affirmative, the Court must grant the petition.

*Nuclear Electric Ins. Ltd. v. Central Power & Light Co.,* 926 F.Supp. 428, 432 (S.D.N.Y. 1996) (citation omitted).

As the Second Circuit recently held, "[T]he parties themselves may provide that the arbitrator, not the court, shall determine whether an issue is arbitrable." *PaineWebber Inc. v. Bybyk,* 81 F.3d 1193, 1195 (2d Cir.1996). Under the Supreme Court's recent decision in *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995), the Second Circuit stated that the question of arbitrability will be submitted to the arbitrators when "there is 'clear and unmistakable' evidence from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability be decided by the arbitrator." *Bybyk,* 81 F.3d at 1198–1199; *see also First Options of Chicago, supra,* 514 U.S. at 942, 115 S.Ct. at 1923 ("the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about that matter" [emphasis in original] ).

The parties' agreement in *Bybyk* provided, inter alia, for the arbitration of "[a]ny and all controversies concerning the construction, performance or breach of this or any agreement," words which the court described as "elastic enough to encompass ... whether a claim is within the scope of arbitration." *Id.* at 1199. The court in *Bybyk* also stressed that the "parties' broad grant of power to the arbitrators is unqualified by any language carving out substantive eligibility issues ... for resolution by the courts." *Id.* at 1200.

■ The arbitration clause contained in the Program Manager Agreement provides for the arbitration of "any dispute arising out of this Agreement." Although the language is not as broad as that in *Bybyk,* the words are "elastic enough to encompass" the arbitrability of Seismic's claims arising out of the Profit Commission Agreement, which depends and is contingent upon the Program Manager Agreement. This is especially true when the agreement is construed in light of the strong federal policy favoring arbitration. Under the Program Manager Agreement, claims for profit commissions in dispute "arising out of" that Agreement are subject to arbitration. *See also Nuclear Electric, supra,* 926 F.Supp. at 434 ("where a party concedes that it willingly manifested assent to a contract that includes an arbitration clause, but claims ... that some other circumstance justifies that party in seeking to avoid the contract, ... that party's claim is simply a defense to arbitrability that is itself arbitrable").

By serving a demand for arbitration asserting claims to recover profit commissions, Seismic appears to concede that the interrelatedness of such claims to the arbitration specifically covered by the Program Manager Agreement are subject to arbitration.

In determining the arbitrability of a dispute in accordance with an agreement to arbitrate, "as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985).

As the Second Circuit has instructed, "[A]rbitration should be ordered unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *McMahan Securities Co. L.P. v. Forum Capital Markets L.P.,* 35 F.3d 82, 88 (2d Cir.1994) (quoting *S.A. Mineracao Da Trin-*

dade–Samitri v. Utah Int'l, Inc., 745 F.2d 190, 194–95 (2d Cir.1984)). There can be no such "positive assurance" here. See also VAC Service Corp. v. Service Merchandise Co., 929 F.Supp. 143, 145 (S.D.N.Y.1996) ("where a contract contains an arbitration clause, there is a presumption of arbitrability that is overcome only by a definitive showing that the dispute in question is outside the arbitration clause").

The fact that as part of the arrangement established by the Program Manager Agreement the parties entered into the Profit Commission Agreement, which contains no arbitration clause, does not alter the analysis. The Profit Commission Agreement simply provides a framework for determining profit commissions due Seismic under the Program Manager Agreement. On its face, the Profit Commission Agreement is to be read in conjunction with, and subject to, the terms of the Program Manager Agreement. See, e.g., Profit Commission Agreement, Sec. 1 ("This Agreement is limited in its application to the lines of business that are the subject of the Program Manager Agreement").

In similar situations, courts have compelled arbitration pursuant to the parties' arbitration agreement, even where the respondent has argued that its claims arise from a related agreement not containing an arbitration clause. In S.A. Mineracao Da Trindade–Samitri v. Utah Int'l, Inc., 745 F.2d 190, 195–96 (2d Cir.1989), for example, the court held, inter alia, that claims relating to the parties' stock purchase agreements, which did not contain arbitration clauses, were subject to arbitration pursuant to a shareholders' agreement involving the same parties, stating that the "stock purchase agreements were executed in accordance with the foregoing provisions of the 1974 Shareholders' Agreement and are subject to the latter's arbitration clause." Id.; see also Pervel Industries, Inc. v. T.M. Wallcovering, Inc., 871 F.2d 7, 9 (2d Cir.1989) (compelling arbitration where relationship between exclusive distributorship and purchase contract containing arbitration clause was "clear and direct"); In re Home Ins. Co., 908 F.Supp. 180 (S.D.N.Y.1995) (ordering arbitration pursuant to arbitration clause in Premium Agreement despite respondent's claim that dispute arose from parties' related insurance policy).

As in Mineracao, the Profit Commission Agreement and the Program Manager Agreement were contemplated and executed together and were all part of the same arrangement between the parties. The Profit Commission Agreement was necessarily related to and dependent upon the existence of the Program Manager Agreement. Accordingly, disputes concerning profit commissions are encompassed within the Program Manager Agreement's arbitration clause.

### Seismic Will Be Enjoined From Prosecuting The California Action

■ A federal court in conjunction with an order compelling arbitration, either on the issue of arbitrability or the issue of the merits of the claim, may stay a related state court action. Were it otherwise, such an order would be rendered meaningless, since a petitioner would have no choice but to litigate arbitrable claims in a pending action or risk default. Pursuant to the Anti–Injunction Act (28 U.S.C. § 2283), a court generally may not stay a state court proceeding, "except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." Id. A stay issued in conjunction with an order compelling arbitration falls within the statutory exceptions to the Anti–Injunction Act.

In Nuclear Electric Ins. Ltd., for example, this Court compelled arbitration of the parties' dispute and stayed a related Texas state court action. In so holding, the court stated:

> The courts in this district have consistently held that a stay, when issued subsequent to or in conjunction with an order compelling arbitration concerning the same subject matter as the state court proceeding, falls within one or both of the latter two exceptions [to the Anti–Injunction Act] .... [citing district court cases].

Moreover, the Second Circuit has approved of this reasoning. See Standard Microsystems Corp. v. Texas Instruments Inc., 916 F.2d 58, 60 (2d Cir.1990).

Because this court has made a "conclusive ruling[ ]" that this dispute is arbitrable and because the effect of this ruling "may be undermined by threatened relitigation" in the Texas state court, *id.,* the motion for a stay of CPL's action against NEIL in the Texas state court pending final disposition of the arbitration is granted.

926 F.Supp. at 436 (quoting *Standard Microsystems, supra,* 916 F.2d at 60); *see also Burger Chef Systems Inc. v. Baldwin Inc.,* 365 F.Supp. 1229, 1233–34 (S.D.N.Y.1973) (staying Michigan state court action and holding, "When, as here, the dispute in question has been found to be subject to arbitration by a federal court, it becomes appropriate to stay state court proceedings").

Even if the issue is viewed in purely injunctive terms, the applicable standard is a demonstration of (1) irreparable harm, and (b) either (1) likelihood of success on the merits, or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. *Jackson Dairy Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979) (per curiam).

█ Reliance will suffer irreparable harm if it is deprived of its federal and state contractual right to arbitrate its disputes with Seismic. *Olde Discount Corp. v. Tupman,* 805 F.Supp. 1130, 1135 (D.Del.1992), *aff'd,* 1 F.3d 202 (3d Cir.1993), *cert. denied,* 510 U.S. 1065, 114 S.Ct. 741, 126 L.Ed.2d 704 (1994) ("loss of [plaintiff's] federal substantive right to arbitrate, should injunctive relief be denied, constitutes irreparable harm clearly distinguishable from purely economic loss"); *Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Haydu,* 482 F.Supp. 788, 792 (D.Fla.1980), *rev'd on other grounds,* 677 F.2d 391 (4th Cir.1982) (risk of engaging in discovery and going to trial "over a controversy for which this court ordered arbitration" constitutes irreparable harm).

Moreover, as demonstrated above, Reliance is entitled to an order compelling Seismic to arbitrate its dispute in accordance with the Program Manager Agreement and the governing federal law. Indeed, the preceding section of this opinion demonstrates the likelihood of success on the merits of this proceeding.

Therefore, whether as a stay to protect jurisdiction or as an injunction to bar irreparable injury, Seismic will be enjoined from proceeding in the California action.

## CONCLUSION

For the reasons set forth above, Seismic will be compelled to arbitrate and will be enjoined from proceeding with the California action.

Settle order on notice.

It is so ordered.